UNITED STATES DISTRICT COURT SOUTHERN DISTRICT OF FLORIDA
PALM BEACH DIVISION

MARIA ESPINOZA,

                                               CIVIL COURT CASE NO.:

          Plaintiff,                           15th Judicial Circuit Court Case No.:
v.                                              502019CA004860XXXXMB

TARGET CORPORATION and JANE
GREER, individually,

          Defendants.
_____/

## DEFENDANT TARGET CORPORATION'S NOTICE OF REMOVAL AND SUPPORTING MEMORANDUM OF LAW

Defendant/Petitioner, TARGET CORPORATION ("TARGET") by and through its undersigned counsel and pursuant to 28 U.S.C. §§1332, 1441, 1446, and Fed. R. Civ. P. 81(c), respectfully petitions the Court for Removal of the above-captioned civil action from the Fifteenth Judicial Civil Court in and for Palm Beach County, Florida to the United States District Court for the Southern District of Florida, Palm Beach Division [Exhibit 1: Civil Cover Sheet].  In support thereof, TARGET states as follows:

1.        Plaintiff filed this state court action styled *Espinoza v. Target Corp. and Jane Greer,* Case No.: 502019CA004860XXXXMB, in the Fifteenth Judicial Circuit in and for Palm Beach County, Florida on April 16, 2019 alleging personal injuries as a result of a "slip and fall on spilled milk" at the Boynton Beach Target store on April 10, 2017.  TARGET was served with the Complaint on April 16, 2019.  [Ex. 2: Summons and Complaint directed to Target: ¶10,5].

2.        On May 8, 2019, TARGET filed its Answer and Affirmative Defenses in response to Plaintiff's Complaint. [Ex. 3 Target Answer].

3.      Plaintiff, MARIA ESPINOZA ('ESPINOZA"), is a resident of Palm Beach County, Florida and is deemed a citizen of the state of Florida. [Ex. 2: ¶2]

4.      TARGET is a foreign corporation incorporated in the state of Minnesota with its principle place of business in Minnesota.  Therefore, TARGET is a citizen of Minnesota [Ex. 3: ¶3].

5.      JANE GREER ("GREER") was served with the Complaint on April 27, 2019. [Ex. 4: Summons and Complaint directed to Greer]

6.      On May 13, 2019, GREER filed her Answer and Affirmative Defenses in response to ESPINOZA'S Complaint.  [Ex. 5: Greer Answer].  GREER consents to removal of this matter to Federal Court. [Exhibit 12: Derrevere Affidavit].

7.      The Complaint alleges that GREER is a resident of Palm Beach County, Florida. GREER is a citizen of the state of Florida [Ex.4:  ¶4].

8.      ESPINOZA sues GREER in her capacity as "the general manager" of the Boynton Beach Target store on April 10, 2017 [Ex. 4: ¶4, 17].

9.      The duty allegation asserted against GREER in the Complaint mirrors the duty allegation asserted against TARGET. In pertinent part, the Complaint alleges as follows [Ex. 2,4]:

- GREER/TARGET owed Plaintiff a duty to maintain the premises in a reasonably safe condition (¶6, 9, 17)

10.     As to GREER, the Complaint contains no allegations whatsoever that she owed an individual duty to ESPINOZA.  The Complaint contains no specific allegations regarding GREER'S personal involvement in the alleged incident.  Notably, ESPINOZA does not allege that GREER caused milk (the liquid in which ESPINOZA slipped) to be on the floor before she fell and ESPINOZA cannot prove that Greer knew milk was on the floor at the time she fell because Greer was not present at the store when the fall occurred.  The unsupported general allegations that

2

GREER "failed to correct a dangerous condition, failed to warn Plaintiff of said dangerous condition, failed to establish policies and procedures to protect invitees such as Plaintiff, failed to adequately train and supervise employees, and that GREER committed other acts of negligence to be determined" do not created a personal duty owed by GREER to ESPINOZA. [Ex. 4:¶18]

11.     To establish liability against a "store manager" under Florida law, the Complaint must allege, and Plaintiff must prove, that the manager owed a duty to her and that the duty was breached through personal fault.  *Kalait v. Target Corp.*, 2019 WL 423318 (M.D. Fla. 2019). Because the duty allegations set forth in ESPINOZA'S Complaint are wholly insufficient to support a claim against GREER in her individual capacity, the pleading fails on its face as a matter of law.  Based thereon, it is clear that as a matter of law GREER was fraudulently joined solely to defeat diversity jurisdiction.

12.     In addition to the foregoing, the pleading fails as a matter of fact.  In support of this Removal, TARGET submits the Affidavit of GREER [Ex. 6: Greer Aff'd.].  As set forth therein, there is no possibility that ESPINOZA can prove that GREER was individually or personally responsible for causing ESPINOZA'S fall and her resulting claimed injuries.

13.     In her Affidavit, GREER attests as follows [Ex. 6]:

- In April of 2017, I was employed as the Store Team Lead at the Boynton Beach Target store T-2067.
- I reviewed the attached Guest Incident Report dated April 10, 2017 which reveals a fall occurred at 06:20 p.m. (exhibit 1).  I was not present at the store on April 10, 2017 when the fall occurred.
- I have no personal knowledge as to how the fall occurred.

14.     Because GREER was not present at the store when the fall occurred, there is no possibility that she was individually or personally negligent in causing ESPINOZA'S fall.  As a matter of fact, GREER has been fraudulently joined in this action solely to defeat diversity and obstruct removal of this case to Federal Court.  GREER should not be considered a party for the

purposes of diversity and her citizenship should be disregarded.   Complete diversity exists between the real parties in interest as ESPINOZA is a citizen of Florida and TARGET is a Minnesota corporation.

14.   In support of her claim, ESPINOZA'S Complaint asserts as follows:

> [Plaintiff] was injured in and about her body and extremities, and/or aggravated a pre-existing injury or condition, incurred pain, suffering, and mental anguish, incurred various medical and related expenses in the treatment of her injuries, suffered physical handicap, incurred loss of capacity for the enjoyment of a normal life, sustained permanent injuries and/or permanent loss of a bodily function, and Plaintiff shall suffer from such losses and impairments in the future.

15.   ESPINOZA'S Complaint seeks damages in excess of Fifteen Thousand Dollars ($15,000.00).

16.   On July 10, 2019, ESPINOZA served her Responses to TARGET'S Interrogatories and Request for Production.  ESPINOZA described in detail how the incident occurred averring as follows [Ex. 7: Espinoza's Interrog. Resp. No. 7]:

> On April 10, 2017, at around 06:00 p.m., I was walking through Target and I slipped and fell on a large puddle of milk.   As I fell down, my head struck the bottom portion of a shelf.   There were no warning signs at the location where I slipped and fell.  There was nothing I could have done to avoid the incident.

17.   TARGET'S Interrogatory Number 8 asked ESPINOZA to describe in detail each act or omission on the part of any party to this lawsuit that she contends constituted negligence.  N response ESPINOZA averred as follows: [Ex. 7]:

> The defendant (Target) allowed a puddle of milk on its floor. The Defendant (Target) failed to properly inspect its premises.  The Defendant (Target) also failed to warn me of the puddle of milk on the floor.  The Defendant (Target) failed to clean up the puddle of milk.

Of significance, ESPINOZA'S response does not refer to GREER nor anything that GREER did or failed to do which caused on contributed to causing milk to be on the floor. [Ex. 7: No. 8]

4

18.     In her sworn Interrogatory Responses, ESPINOZA describes her injuries caused by the incident at Target as follows [Ex. 7: No. 10]:

> I sustained injuries to my head, shoulder, aggravation of neck injury, memory loss, emotional and psychological injuries.

19.     In her Response to Interrogatory Number 12, ESPINOZA has detailed some of the injuries and the conditions which she relates to the incident at TARGET (head trauma, scalp laceration, chronic headaches, vertigo, neck, dizziness, insomnia, anxiety, and post-traumatic stress disorder) and has identified the medical providers who have treated her as follows [Ex. 7: No.12]:

| Provider | Injury/condition and treatment received |
|---|---|
| Plm. Bch. Fire Rescue | Emergency medical care after fall and transport to hospital |
| Bethesda Hospital West | Head trauma, scalp laceration. Treatment after the incident. |
| Neurology Assoc. of Plm. Bch. (Dr. Tirado) | Chronic headaches, vertigo, neck, dizziness, insomnia, anxiety and post-traumatic stress disorder |
| Senior First Physical Therapy, Corp. | Physical Therapy |
| Karen Lomax, LCSW | Chronic headaches, vertigo, neck, dizziness, insomnia, anxiety and post-traumatic stress disorder |

20.     On July 10, 2019, ESPINOZA also served her Response to Request to TARGET'S Production. Therein, she produced over 400 pages of medical records and billing delineating the medical treatment she has received; ESPINOZA also produced 15 color photographs which depict the severity of her injuries [Ex. 8: Photographs]. A summary of ESPINOZA'S medical conditions and the treatment she has received as documented in her medical records follows[1]:

- On April 10, 2017 at 06:33 p.m. Palm Beach Fire Rescue arrived at the Boynton Beach Target store after receiving a 911 call that an elderly woman slipped and fell striking her head on the bottom portion of a store shelf. ESPINZOA complained of pain to her head and knee. A bandage was applied to ESPINZOA'S head and she was transported by ambulance to the emergency department at Bethesda Hospital for further evaluation and treatment.

---

[1] ESPINOZA'S full medical records have been excluded as an exhibit to this Removal Petition to protect her privacy. An unredacted copy of the medical records is available for the Court upon request. In support of its Removal Petition, TARGET submits the medical records reference in paragraph 20 as composite Exhibit 9.

- After arrival at the emergency department, the bandage to ESPINZOA'S head was removed and the emergency room physician irrigated her wound. Twenty-six (26) staples were applied to close the wound to the back of her head. ESPINOZA reported she had a loss consciousness after the fall and underwent diagnostic testing including CT scans of the brain, pelvis, cervical, thoracic and lumbar spines. ESPINOZA was admitted to the hospital; the diagnosis was head trauma, post-traumatic headaches, dizziness.
- On April 11, 2017, ESPINOZA was evaluated for a traumatic brain injury by neurologist Dr. Gerstle. A repeat CT of the brain confirmed a brain hematoma. ESPINOZA complained of dizziness upon standing; medication was prescribed to manage her headaches.
- On April 12, 2017, ESPINOZA was discharged from the hospital with instructions to follow-up with neurology and her primary care physician. Durable medical equipment including a tub/shower bench, grab bars, elevated toilet seat and walker were ordered along with home health care consisting of skilled nursing care and physical therapy as ESPINOZA was unable to leave her home and had residual weakness, fatigue, and dizziness after a fall resulting in a head trauma injury. Skilled nursing was required to assess and monitor ESPINOZA'S head wound for infection, assess ESPINOZA'S neurological status, evaluate medication compliance, and monitor the effectiveness of pain control. Physical therapy was required as ESPINOZA had muscle weakness, dizziness, difficulty with balance and gait. Dr. Yanitza evaluated ESPINOZA'S prognosis as "poor."
- On April 18, 2017, ESPINOZA reported to the physical therapist Law that she feels very unsteady when getting up and when bending or walking; she needed assistance for all activities. ESPINOZA rated her neck and back pain as 5/10 and her knee pain was 4/10. ESPINOZA reported her pain interferes with her sleep, gait, and activities of daily living.
- On April 24, 2017, ESPINOZA reported to the home health care nurse that her physician was not able to remove all the staples to her head due to bleeding and pain. ESPINOZA prays and mediates to manage her pain.
- On November 9, 2017, ESPINOZA presented to neurologist Dr. Tirado with complaints of severe daily headaches associated with dizziness since April 10, 2017. She was prescribed Topiramate to for post-traumatic intractable headaches. ESPINOZA underwent an Infrared/Video ENG to evaluate her complaints and the extent of her vertigo symtpoms.
- ESPINOZA continued to follow-up with neurologist Dr. Tirado at scheduled office visits. On February 28, 2018, ESPINOZA was evaluated by neurologist Dr. Tirado; the assessment was:
  o Concussion with loss of consciousness 30 minutes or less on 04/10/2017 at Target-slip and fall on milk with scalp laceration and 27 stitches. She developed chronic headache and dizziness.
  o Chronic post-traumatic headache with intractable headache. She has chronic daily headaches with sensitivity to light, sound, with superimposed short stabbing pains about the head.
  o Benign paroxysmal positional vertigo of both ears post traumatic.
  o Bilateral carpal tunnel syndrome.
  o Idiopathic progressive polyneuropathy. NCS legs after accident, resolved.
  o Anxiety disorder due to general medical condition because of intermittent vertigo; she is afraid of failing and going out.
  o Secondary insomnia-on temazepam.

6

- On March 27, 2018, ESPINOZA underwent a Vestibular Rehabilitation Assessment; ESPINOZA reported dizziness, headaches, unsteadiness, and fullness/tinnitus in her ear. The assessment was vertigo, dizziness, balance/stability impairments due to peripheral vestibular dysfunction associated with unsteadiness, gait dysfunction and impaired dynamic balance with whole body instability. Vestibular therapy was ordered 2-3 times a week for eight weeks.
- On September 18, 2018 ESPINOZA followed-up with neurologist Dr. Tirado; a Mini Mental Status Exam (MMSE) demonstrated ESPINOZA had a mild cognitive impairment; she was prescribed Donepezil.
- On December 13, 2017, ESPINOZA returned to Dr. Tirado with complaints of continuing headaches; the Review of Systems was positive for weakness, dizziness, headache, neck pain, worsening vision, vertigo, tinnitus, back pain, muscle aches, joint pain, lightheadedness, decreased concentrating ability, memory lapses, walking and difficulty with balance, numbness, feelings of nervous, anxiety, tension, depression, and insomnia. Dr. Tirado's assessment remained unchanged.
- On February 13, 2019, ESPINOZA underwent a Complete Evaluation/Biopsychosocial Assessment by LCSW K. Lomax due to her emotional decompensation related to a fall in April, 2017; ESPINOZA'S complained of the inability to cope due to anxiety, panic attacks, and depression. LCSW Lomax opined ESPINOZA'S anxiety symptoms had been present for months and were at a high level; without treatment, ESPINOZA'S anxiety interfered with her ability to function. Since the incident at Target, ESPINOZA has intense fear and helplessness and continues to experience flashbacks about her fall. She reported difficulty concentrating, difficulty making decisions, excessive worrying, difficulty sleeping, and feelings of intense distress when reminded of the fall. ESPINOZA has memory issues, panic attacks, feelings of isolation, pessimism, fears, and episodes of excessive fatigue. ESPINOZA was diagnosed with chronic post traumatic stress disorder, and therapeutic services were considered medically necessary to alleviate her symptoms of depression anxiety. ESPINOZA was instructed to continue therapy on a weekly basis to help prevent functional and emotional decompensation.

21.      ESPINOZA'S sworn interrogatory responses and her Complaint specifically and unambiguously confirm that she claims physical, emotional, and psychological injuries related to her fall at Target. Along with the records produced by ESPINOZA which detail the extent of her medical care and treatment, ESPINOZA has also produced medical billing in the sum of $34,704.88. [Ex.10: Billing]. ESPINOZA'S Complaint seeks damages in an amount in excess of $15,000.00. The Complaint further alleges that ESPINOZA seeks damages for aggravation of a pre-existing injury, pain, suffering, mental anguish, that she has a physical handicap and that she suffered a loss of capacity for the enjoyment of a normal life. ESPINOZA claims that she has

incurred medical and related expenses for the treatment of her injuries.  ESPINOZA alleges that all

of her injuries are permanent and ongoing, and that she will suffer from those losses and

impairments in the future.

22.    In an effort to confirm the "amount in controversy" herein, TARGET propounded a

Request for Admissions to ESPINOZA on May 8, 2019 requesting she specifically admit/deny that

she will/will not stipulate that she seeks damages in excess of/less than $75,000.00 and admit/deny

that her total damages, including past medical bills, future medical treatment, past pain and

suffering, and future pain and suffering, exceed $75,000.00.  ESPINOZA objected claiming that the

information sought is as "premature as discovery is ongoing." [Exhibit 11: Target's Request for

Admissions, Espinoza's Response].  When given the opportunity to unequivocally confirm that the

amount in controversy herein does not exceed $75,000.00, ESPINOZA refused to do so.   "The

amount of damages suffered by a plaintiff in a personal injury case are uniquely within the

knowledge of the claimant." *Sunrise Mills Limited Partnership v. Adams*, 688 So.2d 464 (Fla. 4th

DCA 1997).  Although ESPINOZA contends the quantum of her damages is "premature" because

"discovery is ongoing," the medical records she has produced and the nature of her claimed injuries

demonstrate that ESPINOZA and counsel have evaluated the extent of ESPINOZA'S claimed

injuries, her medical treatment, resulting pain and suffering, and that they have confirmed the need

for continued treatment in the future.  Consistent with *Sunrise Mills*, ESPINOZA'S Complaint

alleges that her damages exceed $15,000.00; she has also produced medical billing of at least

$34,704.88.  Clearly, Espinoza has a reasonable basis to determine the amount in controversy

herein.  "A plaintiff's refusal to stipulate or admit that she is not seeking damages in excess of the

requisite amount should be considered when assessing the amount in controversy." *White v. PDB*

*State Farm Mut. Auto. Ins. Co.*, 2013 WL 6061890, (M.D. Fla. Nov. 18, 2013), see also *Green v.*

*Wal-Mart Stores*, 2014 WL 6792043, (N.D. Ala. 2014).  ESPINOZA'S equivocal and evasive Response to TARGET'S Request for Admissions is evidence that the amount in controversy herein exceeds $75,000.00.  *See: PDB State Farm*.

23.     In order to provide the Court with a baseline for evaluating whether more than $75,000.00 is in controversy, TARGET also attaches the Affidavit of undersigned counsel in support of Removal.  [Exhibit 12].  As set forth therein, undersigned has performed a search of verdicts in courts throughout the State of Florida involving injuries similar to those allegedly sustained by ESPINOZA. Those claimed losses include head trauma, headaches, vertigo, aggravation of a neck injury, post-traumatic stress disorder, anxiety, depression, memory loss, and panic attacks.  Undersigned's search has revealed multiple verdicts which exceed $75,000.00. Based upon more than thirty-seven (37) years of experience as a trial attorney in South Florida and undersigned's review of ESPINOZA'S discovery responses, including her medical records and billing produced to date, together with ESPINOZA'S claim for pain, suffering, mental anguish, aggravation of a pre-existing injury, physical handicap and loss of capacity for the enjoyment of a normal life, the amount in controversy in this case clearly exceeds the $75,000.00 threshold necessary to invoke federal diversity jurisdiction.  [Exhibit 12: Derrevere Affidavit].

24.     TARGET'S Notice of Removal has been filed within thirty (30) days of service of ESPINOZA'S Interrogatory Reponses. GREER consents to removal of this matter to Federal Court.

25.     Venue is proper in the Palm Beach Division of this Court pursuant to 28 U.S.C. §1446 as the State Court Action originated in this venue.

26.     Copies of all process, pleadings and Orders served on the defendants in the State Court Action are attached hereto as composite Exhibit 13 and therefore, are filed with this Court pursuant to U.S.C. §1446(a).

27.     TARGET has paid the removal fee contemporaneously with the filing of this Notice of Removal.

28.     Pursuant to 28 U.S.C. §1446(d), TARGET has provided a written notice of this Notice of Removal to Plaintiff's counsel and has filed a Notice of Filing of this Notice of Removal with the State Court.  A true copy of TARGET's Notice of Filing of the Notice of Removal is attached as Exhibit 14.

## MEMORANDUM OF LAW

29.     As a predicate for removal, a removing defendant must demonstrate that the district court has original jurisdiction of the action pending in state court.  *Leonard v. Kern,* 651 F. Supp. 263 (S.D. Fla. 1986).  The burden is on the party requesting removal to federal court to show that it has met all of the applicable statutory requirements.  *Wright v. Continental Casualty Company,* 456 F. Sup. 1075, 1078 (N.D. Fla. 1978).  A defendant may introduce its own affidavits, declarations or other documentation to meet its burden.  *Pretka v. Kolter City Plaza II, Inc.,* 608 F. 3d 744 (11th Cir. 2010).

30.     Based upon the removal evidence including ESPINOZA'S discovery responses and the affidavits filed contemporaneously herewith, TARGET has met its burden and has fully complied with the statutory requirements for removal of this matter to federal court.

31.     As a matter of fact and of law, removal herein is proper based on diversity jurisdiction in accordance with 28 U.S.C. §1332 and 28 U.S.C. §1441(a).  GREER has been fraudulently joined to destroy diversity of citizenship between the real parties in interest and her citizenship must be disregarded as a matter of law.  As a result of the foregoing, complete diversity exists between ESPINOZA (Florida) and TARGET (Minnesota) and the amount in controversy exceeds $75,000.00.  The Court possesses jurisdiction over this matter.

## Fraudulent Joinder of Defendant GREER Does Not Defeat Diversity of Citizenship; The Parties are Citizens of Different States

32.     GREER was fraudulently joined in this action in an attempt to defeat diversity and to obstruct removal.  A plaintiff cannot defeat removal by joining a non-diverse defendant having no real connection with the controversy. *Petigny v. Wal-Mart Stores East*, 2018 WL 5983596 (S.D. Fla. 2018), *Thomas v. Big Lots Stores, Inc.*, 2011 WL 303569 (M.D. Fla. 2011). If a defendant is fraudulently joined, her citizenship is not considered in determining whether complete diversity exits. *Accordino v. Wal-Mart Stores East*, 2005 WL 3336503, (M.D. Fla. 2005).

33.     The determination of whether a resident defendant has been fraudulently joined must be based upon the plaintiff's pleadings at the time of removal, supplemented by any affidavits and deposition transcripts submitted by the parties. *Legg v. Wyeth*, 428 F.3d 1317 (11th Cir. 2005).  The standard used to determine fraudulent joinder is similar to that used for evaluating motions for summary judgment under Fed.R.Civ.P. 56(b). *Id.*  All questions of fact are to be resolved in favor of the plaintiff. *Id.*  However, if the plaintiff presents **no evidence** to dispute a defendant's affidavits, the Court cannot resolve facts in the plaintiff's favor "based solely on the unsupported allegations in the plaintiff's complaint." *Id.*  Although the burden to demonstrate fraudulent joinder is a "heavy one," it is not insurmountable. *Ragbir v. Imagine Schs. of Del., Inc.*, 2009 WL 2423105, (M.D. Fla. 2009).  To support a claim against a non-diverse individual, the potential for legal liability must be reasonable, not merely theoretical. *Legg.*  As the Eleventh Circuit has explained:

> [A]ll *disputed* questions of fact be resolved in favor of the non-removing party, as with a summary judgment motion, in determining diversity the mere assertion of metaphysical doubt as to the material facts [is] insufficient to create an issue if there is no basis for those facts.  So also as with a summary judgment motion. We resolve factual controversies in favor of the nonmoving party, but only when there is an actual controversy, that is when *both* parties have submitted evidence of contradictory facts.  *We do not, however, in the absence of proof, assume that*

*the nonmoving party could or would prove the necessary facts*. *Id.* (emphasis in original passage; internal quotes and citations omitted)

34.     In this diversity case, the Court must apply state law to evaluate the sufficiency of ESPINOZA'S claims against GREER.  As Judge Moreno observed in *Petigny*, the liability of an agent of a corporation is best described *White v. Wal-Mart Stores, Inc.*, 918 So.2d 357 (Fla. 1st DCA 2006) which provides in pertinent as follows:

> Officers or agents of corporations may be individually liable in tort if they commit or participate in a tort, even if their acts are within the course and scope of their employment.  However, to establish liability, the complaining party must **allege and prove** that the officer or agent owed a duty to the complaining party, and that the duty was breached through personal (as opposed to technical or vicarious) fault.  An officer or agent may not be held personally liable simply because of his general administrative responsibility for the performance of some function of his employment—he must be actively negligent. *(emphasis supplied)*

35.     ESPINOZA'S Complaint contains no allegations whatsoever that GREER was "actively negligent," that she was personally at fault for causing the incident, nor that she owed an individual duty to ESPINOZA.  There is nothing contained in the Complaint supporting any assertion or inference that GREER was actively negligent in causing ESPINOZA'S injuries. ESPINOZA does not allege that GREER caused milk to be on the floor before she fell nor can she establish that Greer knew milk was on the floor.  The unsupported general allegations that "GREER owed a duty to maintain the store in a reasonable safe condition" and that "GREER failed to correct a dangerous condition, failed to warn Plaintiff of said dangerous condition, failed to establish policies and procedures to protect invitees such as Plaintiff, failed to adequately train and supervise employees, and that GREER committed other acts of negligence to be determined" are insufficient on their face to create a personal duty owed by GREER to ESPINOZA.

36.     To establish individual liability, ESPINOZA **must allege and prove** GREER owed a duty to her and that she breached that duty through personal fault rather than "general

administrative or technical fault." *Kalit v. Target Corp.*, 2019 WL 423318 (M.D. Fla. 2019), *Ruscin v. Wal-Mart Stores, Inc.* 2013 U.S. Dist. LEXIS 199300 (M.D. Fla. 2013). Unsupported general allegations are insufficient to create a personal duty owed by GREER to ESPINOZA. In accordance with *White*, ESPINOZA'S Complaint fails the fraudulent joinder analysis because the allegations contained therein are insufficient as a matter of law to support a claim against GREER. Moreover, based upon GREER'S affidavit the claim against her fails as a matter of fact.

37.     Under Florida law, a store operator has a non-delegable duty to maintain its premises in a reasonably safe condition; that obligation does not transfer to any individual nor does it create a personal duty owed by GREER to ESPINOZA. *See Ruscin v. Wal-Mart Stores, Inc.* 2013 U.S. Dist. LEXIS 199300 (M.D. Fla. 2013). Based upon Greer's affidavit <u>ESPINOZA cannot establish that GREER personally caused milk to be on the floor prior to her fall nor that Greer had prior personal knowledge of the existence of milk on the floor before she fell</u>. GREER'S Affidavit negates any personal liability on her part. GREER attests she was not present at the store when the fall occurred and that she has no personal knowledge as to how the fall occurred. Because GREER was not present at the store, she did not personally cause any liquid substance to be on the floor on the date of the accident. Likewise, GREER does not have personal knowledge as to how the fall occurred.

38.     A store employee cannot be held personally liable "simply because of her general administrative responsibility for the performance of some function of her employment." *Pritchard*. "A non-diverse manager of a corporation cannot be liable to plaintiff where the manager did not personally participate in the events giving rise to the plaintiff's accident." *Id.* citing *Kimmons v. IMC Fertilizer, Inc.*, 844 F.Supp. 738 (M.D. Fla. 1994). For an officer or agent of a corporation to be individually liable, the agent must commit or participate in the tort.

*DeVarona v. Discount Auto Parts and Grant*, 860 F. Supp. 2d 1344 (S.D. Fla. 2012).   Since GREER did not personally cause milk to be on the floor and because she had no prior personal knowledge of the existence of any substance on the floor before ESPINOZA'S fall, she did not individually commit or participate in any tort which caused ESPINOZA'S claimed injuries; GREER was fraudulently joined solely to defeat diversity jurisdiction.

39.     In *Kalit*, Plaintiff filed a negligence Complaint against Target and store manager Figueroa for injuries sustained as a result of a slip and fall at a Jacksonville store.  The Complaint alleged that Figueroa was personally liable for Kalit's injuries because "Figueroa as the store manager was directly responsible for maintaining and operating the store, was personally involved in tortious conduct, and breached her duty to maintain the store in a reasonably safe condition." Figueroa testified that she responded to the scene after the incident occurred, she did not see Kalit fall, and she did not have any personal knowledge regarding the fall.  Target removed the case to Federal Court asserting "Figueroa was fraudulently joined because no possible cause of action exists under Florida law that would permit Figueroa to be held individually liable for Kalit's injuries." Kalit's remand motion contended the Complaint plead a viable negligence claim against Figueroa. Kalit supported her assertion by adding that she had testified Figueroa admitted to her that the substance on the floor was caused by an employee of the store whom Figueroa supervised.  Based thereon, Kalit argued that a claim existed against Figueroa for her "failure to properly hire, train and supervise employees inside the store that was managed by her."

In rejecting Kalit's arguments, Judge Howard found the non-diverse store manager was fraudulently joined because the "Complaint contained no specific allegations regarding Figueroa's personal involvement in the alleged tortious conduct and Figueroa's unrefuted testimony confirmed she did not witness the fall or personally participate in the events giving

14

rise to accident."  Finding that there was nothing in the record to support an inference that Figueroa had prior knowledge of any unsafe condition at the store or that she personally played any role in causing Kalit's fall, Judge Howard dismissed Figueroa from the case because she was fraudulently joined solely to defeat diversity.

40.     The bare allegations set forth in the Complaint against GREER have been conclusively defeated by her affidavit.  ESPINOZA cannot prove her claim against GREER as TARGET'S store manager because the unverified allegations in the Complaint have been overcome by GREER'S undisputed sworn testimony.   The allegations contained in the Complaint are insufficient to establish personal liability against GREER.  Applying the summary judgment standard set forth in Fed.R.Civ.P. 56(b), TARGET has met its burden to demonstrate that GREER was not actively negligent in causing ESPINOZA'S fall.  GREER was fraudulently joined.  Likewise, there is no basis for holding GREER liable in her managerial capacity.

41.     Based upon the facts contained in GREER'S Affidavit, there is *no possibility* that ESPINOZA can plead and prove a claim against GREER in her individual capacity. Because she was fraudulently joined, GREER should be dismissed as a defendant from this case.  Complete diversity exists between ESPINOZA (Florida) and TARGET (Minnesota) pursuant to 28 U.S.C. §1332. *Strawbridge v. Curtis*, 7 U.S. 267 (1806).

### The Amount in Controversy Exceeds $75,000.00

42.     ESPINOZA alleges that TARGET is responsible for her personal injuries and seeks damages arising from the April 10, 2017 incident.  In her Interrogatory Responses, ESPINOZA identifies multiple medical providers who have treated her for the injuries which she relates to the fall at Target.  ESPINOZA has produced over 400 pages of medical records (along with color photographs depicting her significant head wound) which delineate the medical treatment

she has received, the extent of her injuries and claimed severity of her psychological injuries.  Per the medical records, ESPINOZA was treated in the emergency department at Bethesda Hospital after the fall occurred; 26 staples were needed to close the wound to the back of her head.  She was admitted to the hospital for neurological observation and underwent extensive diagnostic testing.   ESPINOZA'S claimed injuries include head trauma, chronic headaches, vertigo, dizziness, aggravation of neck injury, a shoulder injury, post-traumatic stress disorder, anxiety, depression, memory loss, and panic attacks.  Per the medical records, ESPINOZA claims she suffers daily from intractable post-traumatic headaches; she also suffers from dizziness, balance/gait issues, stability impairments, and difficulty walking.   The medical records demonstrate that ESPINOZA complains of neck, back, and joint pains and has been diagnosed with post-traumatic stress disorder associated with excessive fatigue, anxiety, depression, insomnia, panic attacks, difficulty concentrating and making decisions, excessive worrying, feelings of isolation, pessimism, and intense fears and distress when reminded of the fall.   All of the foregoing have resulted in ESPINOZA'S "inability to cope and function as a normal human being."  ESPINOZA'S mental health provider has recommended that she undergo therapy on a weekly basis "due to her inability to cope" and deal with "emotion decompensation" related to the fall at Target.

43.     In addition to the foregoing, ESPINOZA seeks damages for aggravation of pre-existing injuries, pain, suffering, mental anguish, physical handicaps and loss of capacity for the enjoyment of a normal life.  ESPINOZA alleges that all of her injuries are ongoing and permanent and that she will suffer from such losses and impairments in the future.  ESPINOZA alleges in her Complaint that she has incurred medical and related expenses for the treatment of her injuries.

44.     Because ESPINOZA seeks damages in excess of $15,000.00 and her past medical bills total at least $34,704.88, TARGET need only establish by a preponderance of the evidence that it is more likely than not an additional $25,295.12 is in controversy.  *Lubinskas v. America Mutual Ins. Co.*, 2016 WL 8740488 (M.D. Fla. 2016).

45.     As in *Lubinskas*, ESPINOZA'S medical bills are not the only source of damages claimed herein.  The removal evidence demonstrates by a preponderance of the evidence that there is more than $25,295.12 in controversy.  TARGET has met its burden as the amount-in-controversy exceeds the jurisdictional requirement of $75,000.00.

46.     A removing defendant is not required to prove the amount in controversy beyond all doubt or to banish all uncertainty about it.  *Pretka v. Kolter City Plaza II, Inc.*, 608 F.3d 744 (11th Cir. 2010).  District courts are permitted to make reasonable deductions, reasonable inferences, and other reasonable extrapolations from the documents submitted in support of the removal and the Court may use its judicial experience and common sense in determining if a case meets the federal jurisdiction requirements. *See Roe v. Michelin North America, Inc.*, 613 F.3d 1058 (11th Cir. 2010).  Here, the record conclusively demonstrates that TARGET has satisfied the burden to demonstrate that the amount in controversy in this matter is in excess of the jurisdictional threshold limit of $75,000.00.

## CONCLUSION

47.     This action is removable to federal court pursuant to 28 U.S.C. §1332 because there is diversity of citizenship between the real parties in interest and the amount in controversy exceeds the $75,000.00 threshold for federal jurisdiction.  TARGET has met its burden to support removal, and this Court has original jurisdiction over the action.

WHEREFORE, Defendant/Petitioner, TARGET CORPORATION, respectfully requests that this action should be removed to this Honorable Court, that this Court assume full jurisdiction over the cause as provided by law, and that the Court should grant such further relief which is deemed just and appropriate.

## CERTIFICATE OF SERVICE

HEREBY CERTIFY that on the 6th day of August, 2019, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

DERREVERE STEVENS BLACK & COZAD
2005 Vista Parkway, Suite 210
West Palm Beach, Florida  33411
Telephone: (561) 684-3222
Facsimile:  (561) 640-3050
Email:  jdd@derreverelaw.com

BY: _/s/ Jon D. Derrevere_____
JON D. DERREVERE, ESQUIRE
Florida Bar No: 0330132

## SERVICE LIST

**MARIA ESPINOZA versus Target Corporation and Jane Greer**

**United States District Court, Southern District of Florida**

Jon D. Derrevere, Esquire
E-mail: jdd@derreverelaw.com
Derrevere Stevens Black & Cozad
2005 Vista Parkway, Suite 210
West Palm Beach, FL 33411
Phone: (561) 684-3222
Facsimile: (561) 640-3050
*Attorney for Defendant, Target Corporation*

Michael T. Lewenz, Esquire
E-mail: mlewenz@zpllp.com
Zebersky Payne Shaw Lewenz, LLP
110 S.E. 6th Street, Suite 2150
Fort Lauderdale, FL 33301
Phone: (954) 989-6333
Facsimile: (954) 989-7781
*Attorney for Plaintiff, Maria Espinoza*